UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH JOHN INDELICATO, III, | ) | 3:22-CV-00318 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHIPMAN & GOODWIN LLP and | ) | OCTOBER 4, 2024 |
| NEHA PARIKH, | ) | |
| *Defendants*. | | |

MEMORANDUM OF DECISION
RE: MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 25)

Kari A. Dooley, United States District Judge:

*Pro se* Plaintiff Joseph Indelicato[1] filed this employment discrimination complaint against

Defendant Shipman & Goodwin LLP ("Shipman"), in which he claims both religious and race-

based discrimination in connection with the termination of his employment as an attorney at the

Shipman law firm. Plaintiff, who is a white Christian, alleges that he was terminated as a result of

a manufactured harassment complaint by a co-worker of South Asian national origin.[2] Plaintiff

named as additional defendants the United States of America, the Federal Bureau of Investigation,

Christopher Wray (Director of the FBI), Georgetown University, Feng K. An, District Judge Sarala

Nagala, Tanya Hughes, Jason Thody, Frank Blando, 30 Arbor Street LLC, Matthew Berger, and

the U.S. Equal Employment Opportunity Commission.[3] These defendants are alleged to be co-

---

[1] Although proceeding *pro se*, the Court observes that Plaintiff is a licensed attorney in the State of Connecticut, currently on administrative suspension for failure to pay certain funds in accordance with the Connecticut Practice Book. *See* State of Connecticut Judicial Branch website, attorney lookup at https://www.jud.ct.gov/attorneyfirminquiry/JurisDetail.aspx.

[2] This co-worker, Attorney Neha Parikh ("Parikh"), is a named Defendant.

[3] The Court dismissed claims against these defendants without prejudice insofar as they were never served. *See* ECF No. 32. Although Plaintiff appealed the dismissal, the Second Circuit dismissed the appeal. Mandate of USCA, ECF No. 41.

conspirators with Shipman in a multi-year, overarching conspiracy to destroy Plaintiff's life and the lives of other white Christian people.

Plaintiff filed his original complaint on February 28, 2022, an Amended Complaint on July 13, 2022, and a Second Amended Complaint ("SAC") on August 5, 2022.  *See* ECF Nos. 1, 12, 20.  Shipman and Parikh (collectively, "Defendants") have moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendants' primary argument is that Plaintiff's allegations are so bizarre, fantastical, and delusional that there is no controversy suitable for or appropriately decided in a federal court.  Alternatively, Defendants assert that the claims are inadequately supported by factual allegations and must be dismissed under Rule 12(b)(6).  Plaintiff opposes Defendants' motion and requests leave to file a Third Amended Complaint to address any identified deficiencies with respect to the factual allegations.  *See* ECF No. 28.  Because the Court agrees that it lacks subject-matter jurisdiction to adjudicate the claims set forth in the SAC, the motion to dismiss is GRANTED, and Plaintiff's request for leave to file a Third Amended Complaint is DENIED.

**Facts and Procedural History**

The SAC is a sprawling, 643-paragraph document detailing Plaintiff's many grievances against the Defendants and others.  It contains Plaintiff's own interpretations of religious texts and world events.  Rather than reiterate each allegation, many of which may fairly be characterized as racist, misogynistic, and antisemitic, the Court condenses Plaintiff's allegations into four broad categories.

*State-Sponsored "Wokeness" Conspiracy*

Plaintiff alleges a grand conspiracy comprised of members of the U.S. government and judiciary; Shipman and Parikh; Georgetown University ("Georgetown"), where Plaintiff attended

law school; persons associated with an apartment building in Hartford, Connecticut, where Plaintiff lives; and others, the object of which was to ensure he would never succeed in his legal career and to bring about the end of his career.  Plaintiff asserts that this conspiracy targeted him specifically because of his alleged superior intelligence and possession of a law license that they believed posed a threat to the conspiracy's goal of eliminating white conservative Christians.[4] Plaintiff identifies this conspiracy as "Wokeness," a movement that he alleges is religious in nature, SAC, ECF No. 20, ¶¶ 12, 25–30, and is engineered by the Democratic Party to "promote 'antiracism'" and "evangelize people of color into Judaism."  *Id.* ¶¶ 8, 55.  Plaintiff asserts that "Wokeness" seeks to "allocate economic benefits to people in society on the basis of race and religion, with, in effect, Black Jews being the primary beneficiaries, compensated by Satan for turning their back on Christ," *id.* ¶ 17, and is designed to "secure the long-held Jewish objective of implementing global socialism and exterminating Christians, particularly white, European ones."  *Id.* ¶ 58.

Plaintiff specifies that this conspiracy entered the workplace in 2020, when "employees at all employers of any size or significance were required to sit through mandatory trainings about 'racism' which were generally tape recorded."  *Id.* ¶ 17.  Plaintiff alleges that these trainings, and

---

[4] *See* SAC, ECF No. 20, ¶ 104 ("On information and belief, Georgetown evaluated Plaintiff as a high-potential Christian and/or political conservative attorney (a 'subversive').  Because such people are the greatest danger to Marxist organizers, Georgetown engaged in efforts to sabotage Plaintiff's career and placed him in both governmental and quasi-governmental surveillance programs, from which he has never escaped."); *id.* ¶ 396 ("In reality, on information and belief, [Shipman] knew all along that the complaint was a bogus lie, and were merely covering up for Ms. Parikh, because Ms. Parikh is a Woke activist and was just doing a piece of work for her co-conspirators by wasting a high-potential white, European, Christian person."); *id.* ¶ 553 ("The enterprise in this case involves both the wanton destruction of Plaintiff's legal career and obfuscation of same, being as it is that the facts of this case might alert the average Joe that something bigger really is happening.  The purges always start in the key industries and then ripple outward as more institutions are captured, so Plaintiff is a canary in a coal mine.  The ongoing efforts to exclude Plaintiff from the legal industry and silence his protests of same constitute a racketeering enterprise.").

"Wokeness" as a whole, force "American employees to choose between the cross and their paycheck and expressly discriminate[] against Christians." *Id.* ¶ 19.[5]

*The "Wokeness" Conspiracy Targets Plaintiff*

Plaintiff alleges that the "Wokeness" conspiracy began to target him during his time as a law student at Georgetown University Law Center. *See supra* at n.4.  According to Plaintiff, Georgetown is considered "a center of Woke legal thought and activism" due to its curriculum and faculty.  SAC, ECF No. 20, ¶¶ 78–80.  Plaintiff alleges that "Woke activists" at Georgetown flagged him as a "subversive" because of his intelligence, and political and religious beliefs.  *Id.* ¶¶ 81, 104–05.  He describes his involvement in moot court competitions at Georgetown that were allegedly rife with discrimination against him as a conservative Christian.  *Id.* ¶¶ 81, 84, 86–87, 90.

After he graduated from Georgetown, Plaintiff interviewed for a position at Shipman in July 2019 and began working there on August 11, 2019.  *Id.* ¶¶ 140–43.  The SAC claims that Shipman was a member of the "Wokeness" conspiracy with Georgetown because Shipman engaged in "far-left" political activities.  *Id.* ¶¶ 138, 153, 166.[6]  The goal of this alleged conspiracy was to destroy Plaintiff's legal career by "planting" Parikh as a "honeytrap," who would entrap him into committing acts that could serve as the basis for his termination.  *Id.* ¶¶ 30, 566; *see id.* ¶¶ 168–73.

---

[5] *See also* SAC, ECF No. 20, ¶ 68 ("Now a white male with a brown female coworker who feels different because of her skin color can't interact with her out of fear of her accusing him under the code, which will result in his death.  Now white people walk on eggshells around her, and something that wasn't true becomes true.  Now she is different because of her skin color, and now she has to use witchcraft, etc.").

[6] For example, Plaintiff claims that Shipman's alleged involvement in certain legal services (including education, employment law, healthcare, and environmental law) show that it is "intimately connected to the 'Woke' or 'Sustainable' agenda of the far-left', which has as its main intention the imposition of global socialism and the formation of a system of Soviets in the United States."  SAC, ECF No. 20, ¶ 156.  The SAC also derides Shipman's alleged adoption of the "Mansfield Rule," a certification for diversity, equity, and inclusion that is awarded by DiversityLab.  *See id.* ¶ 220.

*Plaintiff's Employment and Termination by Shipman*

The SAC makes a variety of allegations about Parikh's background, her motivations, and her alleged identity as a "Woke activist." *See id.* ¶¶ 174–89. According to Plaintiff, Parikh acted favorably toward him between September 2019 and September 2020, but on September 1, 2020, she filed a sexual harassment complaint against him with Shipman. *Id.* ¶ 291. After this complaint was filed, Plaintiff began to suspect that Parikh was spreading "false and defamatory" rumors about him throughout Shipman, *id.* ¶¶ 309, 314, and he contacted Shipman's Chief Talent Officer, Christina Hermann, with his concerns. *Id.* ¶¶ 301, 324–25. In violation of Shipman's policy, *see id.* ¶ 391, on November 6, 2020, Plaintiff texted Parikh about the complaint and investigation, to which she did not respond. *Id.* ¶ 343. Plaintiff informed Hermann of these text messages. *Id.* ¶ 345. Several days later, on November 10, 2020, Plaintiff emailed Parikh a locked PDF, containing a proposed affidavit that was intended to "serve as a legal cease and desist letter to get Ms. Parikh to understand she was defaming Plaintiff's character . . . and to please stop." *Id.* ¶¶ 349–50.[7] Parikh reported the text messages and email to Shipman, and Shipman thereafter placed Plaintiff on a paid leave of absence while it conducted an investigation into the matter. *Id.* ¶ 358.

On January 4, 2021, Shipman sent Plaintiff a summary of its preliminary findings, concluding that "Plaintiff attempted to 'threaten' Ms. Parikh with his affidavit and that he had been insubordinate in contacting Ms. Parikh on November 6 and 10, and that Hermann had not authorized either contact." *Id.* ¶ 391. Shipman found that Plaintiff had committed retaliation against Parikh, in violation of firm policy. *Id.* On January 26, 2021, Plaintiff was terminated by

---

[7] The password for the locked PDF was "t1ckt0ck," and it was sent to Parikh in an email with the subject line, "Time's Up." SAC, ECF No. 20, ¶¶ 349, 354. In the email, Plaintiff "called Parikh a 'spoiled little brat' and informed her that he was 'done protecting her', and that she had 24 hours to confess that she had lied about the entire thing." *Id.* ¶ 349.

Shipman because of the investigation's findings, *id.* ¶ 408, which Plaintiff alleges were pretextual. *See id.* ¶ 411 ("On information and belief, this is the first recorded instance in American industrial history of a company directing a female employee to falsely accuse another employee of sexual harassment as a pretextual means of forcing his termination for cause and concealing a racial and/or religious motive.").

*Plaintiff's Post-Shipman Allegations*

The SAC contains several other allegations against various Defendants, including Shipman and Parikh.  For instance, Plaintiff claims that Shipman filed a false report with the Connecticut Mental Health Center, resulting in a visit from the Metropolitan Mobile Crisis Unit to his residence on November 24, 2021.  *Id.* ¶ 440.  According to Plaintiff, this visit was intended to defame him further, as well as prevent him from applying for a firearm.  *Id.* ¶¶ 442–43.[8]

The SAC contains a total of fourteen causes of action, with ten against Shipman and five against Parikh.  Count 1 alleges violations of the civil Racketeer Influenced and Corrupt Organizations Act (RICO) by Defendants pursuant to the alleged "Wokeness" conspiracy.  *See id.* ¶¶ 553–54.  Counts 2 and 3 allege that Defendants committed employment discrimination and retaliation against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act (CFEPA).  *See id.* ¶¶ 571–72.  Count 4 alleges wrongful termination under Connecticut common law against Shipman.  *See id.* ¶ 575.  Counts 5, 6, 7, and 8 allege constitutional claims under 42 U.S.C § 1983 against Shipman, for violations of the First, Second, Fifth, and Eighth Amendments.  *See id.* ¶¶ 581, 586, 595–96, 599.  Count 12

---

[8] Plaintiff makes numerous other allegations against the other defendants who were dismissed by the Court without prejudice for failure to serve under Fed. R. Civ. P. 4(m).  These events allegedly took place after Plaintiff had been terminated by Shipman.  *See* SAC, ECF No. 20, ¶¶ 427–548 (detailing allegations against the Hartford Police Department, the Connecticut Board of Permit Examiners, the EEOC, the Connecticut Commission on Human Rights and Opportunities, Judge Sarala Nagala, the FBI, 30 Arbor Street LLC, and the Connecticut Statewide Grievance Committee).

contains a common-law defamation claim against Defendants, *see id.* ¶¶ 611–19, and Count 13 alleges intentional infliction of emotional distress (IIED) by Defendants.  *See id.* ¶ 622.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth.  *Id.* at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).  Furthermore, the Court must construe complaints filed by *pro se* litigants liberally to "raise the strongest arguments [the allegations] suggest." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007).

The appropriate analysis for a facial challenge to subject matter jurisdiction, like the one raised by the Defendants, is similar to that required under Rule 12(b)(6).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . ., the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in

favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject

matter jurisdiction.  *Id.* at 56–57.  "A plaintiff asserting subject matter jurisdiction has the burden

of proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d at 113.

**Discussion**

Although most, if not all, of the claims in the SAC are subject to dismissal for failure to

state a claim, the Court concludes that the SAC is subject to dismissal *in its entirety* because the

allegations are, simply put, fantastical and delusional and therefore beyond this Court's ability to

adjudicate.  "A patently insubstantial complaint may be dismissed, for example, for want of

subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)" if it presents no federal

question suitable for decision.  *Nietzke v. Williams,* 490 U.S. 319, 327 n. 6 (1989)  A court may

dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless," a category

encompassing allegations that are "fanciful," "fantastic," and "delusional."  *Denton v. Hernandez*,

504 U.S. 25, 32–33 (1992) (internal citations omitted).  "As those words suggest, a finding of

factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the

wholly incredible."  *Id*; *see also Hagans v. Lavine,* 415 U.S. 528, 536–537 (1974) (federal courts

lack power to entertain claims that are "'so attenuated and unsubstantial as to be absolutely devoid

of merit'"); *Gallop v. Cheney*, 642 F.3d 364, 368–69 (2d Cir. 2011) (affirming dismissal of

complaint under Rule 12(b)(6) as spun "entirely of cynical delusion and fantasy, where Plaintiff

alleged broad conspiracy among government officials to carry out the terrorist attacks on

September 11, 2001 without any factual foundation"); *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir.

1994) (finding dismissal proper under Rule 12(b)(1) only where claims are "flimsier than doubtful

or questionable" and "essentially fictitious" or otherwise "fanciful" such as those that allege

"bizarre conspiracy theories, any fantastic government manipulations of their will or mind, [or] any sort of supernatural intervention" (quotation omitted)).[9]

As detailed above, the SAC is replete with such fantastical allegations. In support of his purported gender and religion discrimination claims, Plaintiff invokes numerous antisemitic writings and falsehoods (including by citation to *Mein Kampf*, *see* SAC, ECF No. 20, App. A, ¶¶ 5, 17 n.59, 21, 35), to allege that there is a vast, primarily Jewish conspiracy involving federal and state government agencies, the judiciary, private law firms, private universities, national political parties, and various foreign nations, which culminated in his termination. Multiple times, Plaintiff invokes the use of the supernatural by the coconspirators: For example, he claims that "witchcraft" has been used to affect Parikh's account of her interactions with Plaintiff. *See* SAC, ECF No. 20, ¶¶ 31, 68; *see also id.* ¶ 69 ("The Woke religion 'empowers' its believers through the use of witchcraft . . . . Modern technology is ripe with witchcraft; for example, a 'deep fake' video, the use of social media bots, and the selective 'upvoting' of posts that promote preferred narratives . . . ."). Plaintiff states that, by using "the Woke religion and its witchcraft, Parikh has achieved the God-like power of life or death over Plaintiff . . . . If she decides that Plaintiff's career is permitted to continue, it will be so." *Id.* ¶ 186. He also claims that Satan is directly controlling and dictating the actions of the alleged members of the conspiracy. *See id.* ¶¶ 7, 29–

---

[9] Courts, to include those cited, have not consistently approached dismissal of such fantastical or "fictitious" complaints as being appropriate under either Fed. R. Civ. P. 12(b)(1) (for lack of subject-matter jurisdiction) or 12(b)(6) (for failure to state a claim). *Compare Neitzke*, 490 U.S. at 327 n.6 (referencing Rule 12 (b)(1)), *Mendelsohn v. D'Souza*, No. 11-CV-1514, 2012 WL 3043157, at *1, *3, *5 (D. Conn. July 25, 2012) (dismissing "fantastic [and] delusional" complaint under Rule 12(b)(1) and 28 U.S.C. § 1915(e)), *and Rabin v. U.S. Dep't of Health & Hum. Servs.*, No. 23-CV-402, 2024 WL 3344548, at *9 (E.D.N.Y. July 9, 2024) (same), *with Gallop v. Cheney*, 642 F.3d 364, 366 (2d Cir. 2011) (dismissing complaint as frivolous under Rule 12(b)(6)), *and Adams v. Carsey*, No. 21-CV-614, 2021 WL 8155595, at *1–2 (D. Conn. July 9, 2021) (same). Under either analysis, the result would be the same. And because the Court here finds that Plaintiff has not pled an adjudicable case under Rule 12(b)(1), the Court need not, and indeed, *cannot*, adjudicate the sufficiency of the pleadings under Rule 12(b)(6) as to the individual counts alleged. *See Green v. Dep't of Ed. of City of N.Y.*, 16 F.4th 1070, 1074 (2d. Cir. 2021) ("When subject matter jurisdiction is lacking, the district court lacks the power to adjudicate the merits of the case . . . .").

30, 72; *see also id.* ¶ 168 ("Shipman fully intended to destroy Plaintiff's career in ritualistic, occult-like fashion from the get-go, and didn't want to scare Plaintiff away from walking into the trap."). Plaintiff alleges that the "Wokeness" conspiracy has created the antichrist. *Id.* ¶ 17 ("Wokeness is, in biblical terms, the antichrist.").

The SAC alleges that dozens of actors have conspired to deprive Plaintiff of his employment, his housing, and his life. He alleges that members of the conspiracy have used witchcraft, Satanism, covert assassination attempts,[10] and espionage techniques,[11] to discredit him and turn him into a "slave." *Id.* ¶¶ 73, 563(g), 586–87. These allegations, along with countless others in the SAC,[12] are "precisely the sort of conspiracy theories that the Court is powerless to entertain." *Tartt v. United States*, No. 19-CV-1615, 2019 WL 5328737, at *3 (D.D.C. Oct. 21, 2019), *aff'd*, No. 19-5308, 2020 WL 1918358 (D.C. Cir. Mar. 26, 2020). Although Plaintiff objects to the use of the term, *see id.* ¶ 430, there is no better word to describe the SAC other than

---

[10] *See* SAC, ECF No. 20, ¶ 442 ("On information and belief, the outreach from the Mobile Crisis unit was designed to create a false pretext that Plaintiff is an unreliable witness with respect to his own perception of reality, and/or, at the most extreme, to conceal an assassination as a mental-health related suicide."); *id.* ¶ 509 ("On the way to the post office, Plaintiff's car[] experienced a catastrophic brake line failure, nearly resulting in a serious accident. . . . There was a pinhole rupture in a brake line junction, as though a hole had been drilled in it.").

[11] *See* SAC, ECF No. 20, ¶¶ 102–03, 106–07 (arguing that the FBI surveils "talented conservative law students" like Plaintiff through the intelligence programs "Infragard" and "COINTELPRO" to identify "subversives"); *id.* ¶ 30 ("[Parikh] was indeed planted as a 'honeytrap' for Plaintiff, but the Satanists at Shipman could see it became real, and this seemed to upset Satan. All manner of witchcraft and lying has and will be used to prevent [Parikh] from being pulled back. This includes vicious efforts to destroy Plaintiff's life and moral character (the 'full Lansa'), which will be amusing to observe, and for which Plaintiff has named DOES 1–20." (footnote omitted)).

[12] Again, by way of example, Plaintiff repeats the infamous and long-debunked conspiracy theory that the mass shooting at Sandy Hook Elementary School on December 14, 2012, was staged, *see* SAC, ECF No. 20, App. B, ¶¶ 265–69, and indeed, points to Shipman's alleged ties to the Sandy Hook school district as evidence of the conspiracy alleged in the SAC. *Id.* ¶¶ 273–75 ("On information and belief, Shipman & Goodman LLP was counsel to the Newtown School District at the time of the shooting."). He also alleges that Shipman's alleged service in the subject areas of "School Law, Employment Law, Municipal Finance, Healthcare, and Environmental [Law]" shows that the Defendants are "intimately connected to the 'Woke' or 'Sustainable' agenda of the 'far-left', which has as its main intention the imposition of global socialism and the formation of a system of Soviets in the United States." SAC, ECF No. 20, ¶ 156. Plaintiff alleges that the COVID-19 pandemic was also orchestrated by this same "Wokeness" conspiracy, including involving Johns Hopkins University, Microsoft, Bill Gates, CNN, and Jeffrey Epstein. *Id.* ¶¶ 155–69.

as a manifesto regarding the Plaintiff's world view.  And the Court simply does not have the power

to adjudicate such claims.

In response to Defendants' jurisdictional arguments, Plaintiff offers only more allegations

and what he claims to be evidence that the conspiracy he alleges *does*, in fact, exist and is at the

heart of his termination from Shipman.  He does not submit a memorandum of law as required

and, indeed, eschews the need to do so.  Pl.'s Opp'n, ECF No. 28, at 3.  He refers to the legal

authority cited by Defendants as "irrelevant"; condemns their claims as "strawman" assertions and

offers his "truth" to support the existence of the conspiracy alleged.  *Id.* at 14–31.  At the end of

the day, it is Plaintiff's own summary argument that makes clear this Court's inability to adjudicate

the claims he purports to bring.  He writes:

> Simply put, Plaintiff's analysis of Woke ideology, and how his disagreement with it triggered the series of events described in the SAC, is in no way fanciful or delusional.  **There really and truly is a global conspiracy unfolding to destroy the Christian faith using Woke ideology**, which Plaintiff has really found himself swept into in a way he could have never envisioned in his worst nightmare.  **It really is the case that anyone who (like Plaintiff) disagrees with Woke ideology is promptly attacked from all sides and removed from society (to the extent possible), defamed, harassed and (if they have any influence) persecuted by American intelligence agencies, and denied basic constitutional and human rights** (the same ones Plaintiff complains of, except likely to the exclusion of the Second Amendment, which could only happen in Connecticut).  **It really is the case that a series of global catastrophes (disease, economic calamity, famine and thermonuclear world war) are being manufactured to hasten the death or otherwise force the compliance (enslavement) of those people who, like Plaintiff, have been cruelly cast out of the system.**  Those people are and will continue to be overwhelmingly white, European Christians, who are the only people who have any reason to reject Woke ideology, not because they are racists and extremists, but because many of them try to believe in God.  **Lastly, uncomfortable as it may be, it really is the case that the Jews are the masterminds and primary responsible actors, as has been the case in every single one of these civilization-wide attacks in the last 200 years.**

*Id.* at 7 (emphases added).  For these reasons, the SAC must be dismissed with prejudice.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 25) is GRANTED,

and Plaintiff's request for leave to file a Third Amended Complaint is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of October 2024.

                        */s/ Kari A. Dooley*
                        KARI A. DOOLEY
                        UNITED STATES DISTRICT JUDGE